By the Court. Slosson, J.
Unless the receiver in the present case stands in the position in which the Sheriff would have stood, had he levied upon, taken possession of and sold the property under an execution, his sale, especially in the manner in which it was conducted, was a wrongful act, to the injury of the rights of the plaintiff, and for which both he and Monaghan are liable as trespassers.
In the case of Hull v. Carnley, (1 Kernan’s Rep. 501,) on which these defendants rely, the complaint was that the Sheriff by levying upon and taking the property in the hands of the mortgagor, who was in possession under a similar license or authority to that contained in the mortgage in the present case, and by selling it without referring to, or recognizing the plaintiff’s lien on it by virtue of the mortgage, had illegally deprived the plaintiff of its possession. The property, (in that case,) was sold all together, and no injury was shown to have accrued to the property itself. The Court held, that as the mortgagee, the plaintiff had, at the time of the levy, taking and sale, no right of possession, no injury was done to the plaintiff by the act of the *465 Sheriff, and that he was justified in what he did by his process, and this, notwithstanding the Sheriff had full notice of the existence of the mortgage, and that nothing had been paid on it.
In the case at bar, the receiver after the refusal of the Judge to grant an order directing Schenck to deliver over the property to him, forcibly, and without Schenck’s consent, and in his absence, took it away from his dwelling house, and afterwards, and while an injunction against its sale was pending, and unrevoked, sold it at public auction, in parcels, to different parties, at a sale where other articles were also sold indiscriminately with them, and without giving any notice of the mortgage, or of the nature of the interest which he was selling, though he had full knowledge of the mortgage and its contents. He not only acted,, without any authority from the Court which had appointed him, b]¿t in express violation of its order. His office clothed him with no such power.
Strictly, the act of taking and selling was not an injury to the plaintiff’s right of possession, for at that time he had no such right, and could not then have maintained trover for the property, whatever right, if any, Schenck might, under .the circumstances, have had to such an action. But the receiver had no right to sell more than Schenck’s temporary right of possession, if he had any right to sell at all, and he was bound to sell the property all together, so that when the mortgage fell due, the plaintiff might, if his debt was not paid, find the property and take possession of it.
If he had a right to take the property, he could not lawfully do anything with it, which should defeat or impair this ultimate right of the plaintiff.
But in truth, the taking and sale were both unjustified, and as respects the receiver, wholly illegal and void, as against the plaintiff. The receiver acted on his own motion, under direction of Monaghan throughout, and the consequence of his acts to the plaintiff, has been the loss of his security under the mortgage.
What would have been the Receiver’s position had he acted-under the authority of the Court, it is needless to enquire. It is enough for the present case to know that he acted not only without such authority, but in express violation of an order of the *466 Court which had enjoined him from selling. He has no such justification of process, as the Sheriff had in the Hull and Carnley case.
The action is not brought for an injury to a right of possession in the plaintiff at the time the property was taken and sold, but to recover damages for the illegal and wrongful act of the Eeceiver and Monaghan, in taking and selling the property without reference to or recognition of his rights under the mortgage, in consequence whereof he has lost his security.
If the Eeceiver can in any sense be said to be justified in taking the property, he was bound to keep it until the mortgage became due, or if he sold it, to sell only the right of Schenck in it, which was a mere right of temporary possession, with an equity of redemption. He could have or acquire no better or greater right in the property than Schenck had, and is as much a trespasser as Schenck would have been, had he then undertaken to sell the property in parcels and appropriate the proceeds.
We are clearly of opinion that the plaintiff is entitled to recover against these defendants, as damages, the full face of his mortgage and interest, with interest on the aggregate amount from the time it became due. '
In respect to the defendant Gosling, the only demand made of him for the delivery of the property purchased by him was made in January, 1856, some three months after the mortgage fell due.
Gosling was a bond fide purchaser without notice of the existence of the mortgage.
It is contended, on his behalf, on the strength of Gregory v. Thomas (20 Wendell Rep. 17), that as a copy of the mortgage was not refiled within the 80 days before the expiration of the year after the first filing, which was on the 11th day of October, 1854, the mortgage as against him had ceased to be valid. (2 E. S. 136, marg. § 11.)
In the case relied upon, a first mortgagee who had neglected to refile his mortgage, took possession of the property some three months after his mortgage fell due, and the Court held that his mortgage would have been void as against the plaintiff who was a subsequent mortgagee of the same property if it had not been proved, that when he took his mortgage, he had actual notice of the existence of the first (defendant’s) mortgage, and the Court *467 held by reason of such actual notice he was not a subsequent mortgagee “in good faith ” within the meaning of the. Statute.
In the present case Gosling was a purchaser without notice, and therefore a purchaser “in good faith,” and I do not see why the principle of that decision does not fully protect him, unless the fact that in that case the goods when taken were in the actual possession of the mortgagor and had been so for the whole period after the mortgage fell due, and in the case at bar, the property had been long taken from the mortgagor’s possession, shall be held to constitute a controlling difference.
The statute (section 9,) requires the mortgage to be filed in all cases where the property remains in the hands of the mortgagor, as was the case in the present instance.
Section 11 provides, that “ every mortgage filed in pursuance of this act shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith after the expiration of one year from the filing thereof, unless within .thirty days next preceding the expiration of said term of one year a true copy,” &c., be again filed, &c.
The necessity for the original filing having once existed, and the mortgage, in consequence, having once been filed, I do not see how we can hold that the fact, that before the year expires the property has been taken from the possession of the mortgagor, relieves the mortgagee from the necessity of refiling a copy, if he wishes to retain his lien as against a subsequent purchaser or mortgagee without violating the letter of the statute.*
We think therefore that as against Gosling the complaint should be dismissed, and judgment rendered in his favor. †
*468 Judgment was ordered in favor of the plaintiff against the defendants, Monaghan & Cavanagh, and the complaint, as to the defendant Gosling, was dismissed.

 Was the mortgage void as against Gosling, merely because it was not refiled within thirty days before the expiration of a yeaf from the filing thereof with such a statement as the statute prescribes? Must'he not have been a purchaser after the expiration of the time for the refiling of the mortgage, to enable him to say it had become void as to him, as a subsequent purchaser in good faith? Does not the word “subsequent,” as used in the act of 1833, p. 402, mean subsequent to the time when the mortgage should have been refiled? See Meech et al. v. Patchin, 14 New York R. 71.

 At the November General Term, 1857, on the authority of the decision in this case, it was also held by this Court in Goulet v. Asseler & Meyer, that a sale of per *468 aortal properly, covered by a valid chattel mortgage, in parcels, out and out, to different purchasers, in disregard of the mortgagee’s right, subjected the execution creditor of the mortgagor, by whose direction such sale was made, in an action by the mortgagee brought after the mortgage became due, to damages equal to the value of the property, less such deduction for its use during the time the mortgagor had a right to possess and enjoy it, as was just. In the opinion delivered in that case, Mm el al. v. Balleston et al, 8 Eng. L. and Eq. 483, was cited as a case in point, and appears to be a decision of the precise question. Since then Hull v. Carnley, after a second trial had in this Court, has been a second time before the Court of Appeals. (17 N. Y. R. 202.)
On the second trial it was proved, that although the Sheriff sold the property in parcels and absolutely, instead of merely selling the mortgagor’s interest, it was all sold to one person, and it appeared that all of the prd^erty was in the possession of the mortgagor when the action was commenced, he having hired the use of it from the purchaser.
The Court of Appeals, held that the Sheriff was not liable as a trespasser for seizing the property, nor for a conversion of it, although he sold it absolutely in parcels, on the ground that, at the time of such seizure and sale the mortgagee was neither in possession nor entitled to the possession of the property. The opinion of the Court concludes thus: “We would not be deemed as holding, at this time, that a mortgagee has any action at law against the Sheriff, in such case, but if he has any, it would be for consequential damages for the injury to his lien; and if such an action had been brought it could not have been maintained in this case, for the reason that, although sold in parcels, it was all bid in by one man, and remained in the possession of the mortgagor at the time of the commencement of this suit. It is manifest, therefore, that he sustained no actual damage.”—III. 204-205.
Whether a mortgagee, who has been wholly deprived of his security by reason of a sale and delivery of the mortgaged property to different purchasers, under such circumstances that the mortgagee is unable to find it, and compel its application to the payment of the mortgage debt, is a question that may be regarded as not affected by the decision last made by the Court of Appeals, in Bull v. Carnley (17 IT. T. B. 202).
And the question remains, whether Cavanagh, as receiver, considering the circumstances under which he seized and sold the property, is entitled to the protection which the law extends to a Sheriff in executing a valid process, which it is his duty to execute?
The question of Cavanagh’s liability to the mortgagee, for impairing the value of his security by an abuse ofthe mortgaged property, is not affected by the decision in Bull v. Carnley. Whether Monaghan, or Cavanagh, as against the plaintiff, can, in any event, retain the excess for which the property was sold, over and above the amount of Monaghan’s judgment against Sehenek, may be a question of some importance, when properly presented for the judgment of the Court.